```
                                               U.S. DISTRICT COURT
                                               DISTRICT OF VERMONT
                                                    FILED
         UNITED STATES DISTRICT COURT          2024 FEB -8 PM 2:34
                  FOR THE
            DISTRICT OF VERMONT
                                                     CLERK
                                               BY   /s/
UNITED STATES OF AMERICA     )                    DEPUTY CLERK
                             )
     v.                      )     Case No. 2:17-cr-00083
                             )
DEAN SHORES                  )
```

## OPINION AND ORDER
## ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION,
## DENYING AMENDED § 2255 PETITION, AND
## DENYING A CERTIFICATE OF APPEALABILITY
(Docs. 121 & 163)

This matter came before the court for a review of the Magistrate Judge's July 20, 2023 Report and Recommendation ("R & R") (Doc. 163), in which the Magistrate Judge recommended that the court deny Petitioner Dean Shores's amended 28 U.S.C. § 2255 petition. In his petition, Petitioner seeks a reduction of his sentence of 120 months imprisonment based on his claims that his counsel provided ineffective assistance by: (1) failing to obtain a plea agreement to the Indictment, which carried a five-year mandatory minimum sentence, as opposed to the Superseding Indictment, which carried a ten-year mandatory minimum sentence; (2) violating the Speedy Trial Act and the Interstate Agreement on Detainers (the "IAD"); and (3) allowing the "state and federal authorities, including the state trial judge, [to] conspire[] against [him] to deprive him of his 8th [Amendment] right to reasonable bail as well as due process, speedy trial and possible double [jeopardy]." (Doc. 138 at 2.) On August 23, 2021 and October 22, 2021, Paul Garrity, Esq., and Heather Ross, Esq., filed affidavits addressing Petitioner's arguments in the petition.

On August 14, 2023, Petitioner objected to the R & R and argued the Magistrate Judge erroneously (1) concluded that Attorney Garrity did not represent him in his case in the District of Vermont, (2) determined he failed to establish Attorney Ross's ineffective assistance, and (3) held that Petitioner's August 18, 2017 arrest was not the

commencement of his federal case. The government has not filed a response to his objections.

Petitioner is self-represented. The government is represented by Assistant United States Attorneys Jonathan Ophardt and Andrew C. Gilman.

**I.      Factual and Procedural Background.**

In May 2017, police in Burlington, Vermont began investigating Petitioner for distribution of controlled substances. On May 4, 2017, a confidential informant made a controlled purchase of pills containing fentanyl analogues from Petitioner. Law enforcement arrested Petitioner the next day at his place of business, at which time they found methamphetamine, fentanyl, Adderall pills, and U.S. currency. After waiving his rights under *Miranda v. Arizona*, 384 U.S. 436, 479 (1966), Petitioner admitted that he was a "large-scale" dealer of drugs, including methamphetamine, cocaine, and opiates, which he acquired at least in part through the United States Postal Service.

Petitioner consented to a search of his business and accompanied law enforcement during the search, which yielded methamphetamine, fentanyl analogues, Xanax, and Adderall. Law enforcement obtained a state search warrant for the same address, and Petitioner led law enforcement to a safe containing approximately $50,000 in U.S. currency and approximately 200 grams of 98% pure methamphetamine. After Petitioner assisted with these searches, law enforcement released him from custody. Based on Petitioner's statements and the drugs seized at his business, law enforcement obtained two additional state search warrants for his residence and vehicle, which resulted in the seizure of additional cocaine, Xanax, fentanyl, and $17,000.

On May 31, 2017, a United States Postal Inspector in Vermont obtained a federal search warrant for several packages addressed to Petitioner. The packages contained various pills and two vacuum-sealed bags of Ketamine.

On August 18, 2017, the Drug Enforcement Agency ("DEA") informed the Massachusetts State Police that Petitioner intended to take a flight from Logan Airport in Boston that afternoon. After determining that Petitioner had two active Massachusetts arrest warrants, law enforcement agents arrested Petitioner at the airport. Upon searching

2

his person and luggage, law enforcement seized a loaded Glock .45 caliber magazine, methamphetamine hidden in a shaving can, approximately $15,000, and Hydrocodone.

On August 21, 2017, law enforcement obtained federal search warrants for Petitioner's business, residence, and vehicle and found a ledger, cocaine, fentanyl pills, and methamphetamine. Law enforcement also found ammunition and an August 6, 2017 bill of sale for a .45 caliber Glock handgun. A search of Petitioner's sailboat resulted in the seizure of gamma hydroxybutyric acid ("GHB"), cocaine, methamphetamine, psilocybin mushrooms, and a ledger that appeared to document his drug transactions. During a search of three of Petitioner's rental storage units, law enforcement officers found additional U.S. currency and cocaine.

On August 21, 2017, Petitioner appeared in Suffolk Superior Court in Massachusetts on charges of drug possession, possession with intent to distribute methamphetamine, and unlawful possession of ammunition. That same day, a federal criminal complaint was filed in the District of Vermont charging Petitioner with possession with intent to distribute 50 grams or more of methamphetamine on May 5, 2017. On August 31, 2017, a federal grand jury in the District of Vermont returned a two-count Indictment charging Petitioner with possession with intent to distribute 50 grams or more of methamphetamine on or about May 5, 2017, and possession with intent to distribute cocaine on or about August 18, 2017 based on conduct which occurred in Vermont.

Petitioner retained Attorney Garrity to represent him in the Massachusetts case. During the course of his representation, Attorney Garrity learned federal charges were pending in Vermont. He discussed whether he would represent Petitioner in his Vermont case and advised Petitioner of his fee for handling that case. Attorney Garrity also spoke with Petitioner's mother, who helped Petitioner gather funds for his federal representation. Attorney Garrity was licensed to practice only in Massachusetts and New Hampshire, and he informed Petitioner and his mother that he would need to seek pro hac vice admission to represent Petitioner in the Vermont federal case if he was retained. Because Petitioner was ultimately unable to pay the retainer, however, Attorney Garrity

did not represent Petitioner in his federal case in Vermont.

On July 11, 2018, Petitioner was convicted of the Massachusetts charges and sentenced to a term of two years and one day imprisonment on the drug offenses and a concurrent term of one year for the ammunition offense. The next day, federal prosecutors filed an application for a writ of habeas corpus ad prosequendum to bring Petitioner to the District of Vermont for an arraignment on the Indictment. On July 31, 2018, the U.S. Marshals Service executed the federal arrest warrant.

On August 6, 2018, after reviewing his financial affidavit, pursuant to the Criminal Justice Act, the court appointed Attorney Ross, a former federal prosecutor, to represent Petitioner. Petitioner appeared for his federal arraignment in the District of Vermont on August 28, 2018, and was detained. The pretrial motions deadline was November 26, 2018, and the court ordered that the time from August 28, 2018 through November 26, 2018 be excluded from the Speedy Trial Act calculation.

On August 29 and 30, 2018, Attorney Ross consulted with the government about a potential resolution but the government "would not accept a plea on Count I to a five-year mandatory minimum." (Doc. 146 at 5, ¶ 24.) Instead, "the government intended to obtain a superseding indictment charging [Petitioner] with conspiring to distribute 50 grams or more of (pure) methamphetamine carrying a ten-year mandatory minimum sentence." *Id.* By November 21, 2018, only days before the November 26, 2018 pretrial motions deadline, the government provided Attorney Ross "with laboratory reports supporting its allegation that [Petitioner] possessed over 50 grams of pure methamphetamine." *Id.* at 16, ¶ 78.

During the pendency of the Vermont federal case, both Attorney Ross and the government requested and received several continuances. In addition to filing a motion to suppress, Attorney Ross engaged in extensive plea negotiations with the government and researched whether the case should be dismissed based on a violation of Petitioner's rights under the Speedy Trial Act and the IAD. The government's initial plea offer required Petitioner to plead guilty to a two-count Information charging possession with intent to distribute 50 grams or more of methamphetamine and possession of a firearm in

4

furtherance of a drug trafficking crime. The plea offer carried a statutory mandatory minimum sentence of fifteen years. *See* 21 U.S.C. § 841(b)(1)(A); 18 U.S.C. § 924(c).

Attorney Ross continued advocating on Petitioner's behalf to secure a more favorable plea agreement, including sending a detailed memo to the government and scheduling a meeting with the Chief of the Criminal Division in the U.S. Attorney's Office. The government subsequently offered a revised plea agreement omitting the § 924(c) firearm charge but retaining the drug charge that carried a ten-year mandatory minimum sentence. Attorney Ross resumed gathering mitigating evidence after her receipt of the revised plea offer.

On August 27, 2019, a Superseding Information was filed charging Petitioner with conspiracy to distribute 50 grams or more of methamphetamine, fentanyl, GHB, and Ketamine between in or about June 2016 and in or about May 2017. The parties also filed a plea agreement containing, in relevant part, a factual stipulation that Petitioner conspired to distribute over 196.2 grams of methamphetamine between June 2016 and May 2017. The agreement did not contain a stipulation as to a sentence. Petitioner waived indictment and pleaded guilty to the Superseding Information.

On August 27, 2019, as part of his plea colloquy, Petitioner confirmed that he was satisfied with Attorney Ross's representation. The Presentence Report ("PSR") determined a base offense level of 32 based on a converted drug weight of 6,035.25 kilograms. The base offense level was increased by two levels based on Petitioner's possession of a dangerous weapon; increased by two levels due to Petitioner's use of an interactive computer service to distribute controlled substances; and increased by two levels because he was an organizer, leader, or manager of the drug distribution activity. After a three-level reduction for acceptance of responsibility, the total offense level was 35. Petitioner's criminal history category was III. As a result, his advisory Guidelines range was 210 to 262 months, with a statutory mandatory minimum term of 120 months of imprisonment.

Attorney Ross asked the court to sentence Petitioner to no more than the mandatory minimum of ten years, and the parties jointly requested that the court reduce

5

his sentence by twenty-four months to account for the time he had served in state custody in Massachusetts. With credit for the twenty-four months in state custody, the government requested a Guideline sentence.

The court agreed with the determination of the applicable Sentencing Guidelines set forth in the PSR and adopted the parties' request for a § 5K2.23 departure to account for the twenty-four months Petitioner spent in state custody, resulting in a Guidelines range of 186 to 238 months.

Considering the sentencing factors under 18 U.S.C. § 3553(a), the court noted that "[e]ven if the [c]ourt could depart below the . . . mandatory minimum sentence . . . the [c]ourt would not do so." (Doc. 140 at 59:23-5.) The court found that Petitioner "need[ed] an additional consequence for the firearms," and would "add that consequence" in the form of "the 24 months that [Petitioner] already served." *Id.* at 59:25-60:3. The court further observed that "the big question before the [c]ourt is: Is a sentence of 12 years sufficient, but not greater than necessary, for what you have done? And looking at the facts carefully and thoroughly, I agree that it is." *Id.* at 60:4-7. The court ultimately concluded that "12 years . . . for drug dealing with firearms is a sufficient, but not greater than necessary, sentence." *Id.* at 60:10-12. Accordingly, Petitioner was sentenced to a term of 120 months imprisonment with credit for time served and five years of supervised release. The court's sentence was 46 months below the low end of the revised Guidelines which provided for credit for Petitioner's time in Massachusetts state custody.

On January 22, 2020, judgment was entered. Petitioner did not appeal his conviction or sentence. On January 22, 2021, he filed his initial § 2255 petition and he filed the amended petition on July 19, 2021.

**II.   Conclusions of Law.**

    **A.   Standard of Review.**

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir.

6

1999). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); *accord Cullen*, 194 F.3d at 405. A district judge, however, is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a reports and recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

Courts afford pleadings filed by self-represented parties "special solicitude." *See Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (internal quotation marks omitted). The court is thus required to read a self-represented party's filing liberally, construe it to raise the strongest arguments it suggests, *see Harris v. Miller*, 818 F.3d 49, 56 (2d Cir. 2016) (per curiam), and hold it "to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted).

### B. Whether Attorney Garrity Represented Petitioner in the Vermont Federal Case.

Petitioner argues that the Magistrate Judge erred in concluding Attorney Garrity did not represent him in the Vermont federal case because the R & R contains no communication between Attorney Garrity and Petitioner in which Attorney Garrity "expressly disclaimed his status directly to his client." (Doc. 164 at 3.) He contends that Attorney Garrity first represented him on New Hampshire charges, then on the charges related to his arrest in Massachusetts in August of 2017, and subsequently in the Vermont federal case. There is no evidence that Attorney Garrity entered an appearance in the Vermont federal case.[1]

The Sixth Amendment guarantees an accused the right to the assistance of counsel in all criminal prosecutions. U.S. Const. amend VI. The purpose of this right is "to ensure that criminal defendants receive a fair trial[.]" *Wheat v. United States*, 486 U.S. 153, 159

---

[1] Although Petitioner points out that the government cites no evidence that Attorney Garrity declined representation, Petitioner cites no evidence that his desire to hire Attorney Garrity in the Vermont federal case came to fruition. Under the court's Local Rules and the Federal Rules of Criminal Procedure, Attorney Garrity would be required to notify the court of his representation prior to being granted permission to appear in court.

7

(1988) (internal quotation marks omitted). Accordingly, "in evaluating Sixth Amendment claims, the appropriate inquiry focuses on the adversarial process, [and] not on the accused's relationship with his lawyer as such." *Id.* (internal quotation marks omitted). "Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.*

The Sixth Amendment right to choose one's own counsel, however, is not absolute. *See id.* at 159-60; *see also Moreno-Godoy v. United States*, 2014 WL 1088300, at *29 (S.D.N.Y. Mar. 20, 2014) ("There is no guarantee that the effort to obtain a particular counsel will be successful."). "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). "Nor may a defendant insist on representation by a person who is not a member of the bar, or demand that a court honor his waiver of conflict-free representation." *Id.* at 151-52; *see also United States v. Isaacson*, 853 F. Supp. 83, 86-87 (E.D.N.Y. 1994) (observing a defendant's right to counsel of his or her choice may be subordinated where, for example, "the prospective advocate is not a member of the bar, the attorney declines to represent the defendant, the attorney has a prior or ongoing relationship with an opposing party, or where the attorney represents codefendants in a multidefendant criminal prosecution"). This court's Local Rules require that attorneys be admitted to practice in this court. *See* D. Vt. L.R. 83.1.

As the filings on the docket and Attorney Garrity's affidavit indicate, he is not licensed to practice in Vermont, and he did not file a motion to be admitted pro hac vice. After reviewing Petitioner's financial affidavit, the court appointed Attorney Ross to represent him. Based on these undisputed facts, the Magistrate Judge reasonably concluded that Attorney Garrity did not represent Petitioner in the Vermont federal case. Petitioner cites no evidence to the contrary. At best, he has established that he intended to hire Attorney Garrity to represent him in the Vermont federal case but lacked the funds to

8

do so and thus sought appointed counsel instead.[2] Petitioner cites no authority to support a § 2255 petition involving an attorney that did not represent him in the case at issue.

### C. Whether Attorney Ross Provided Ineffective Assistance of Counsel.

Petitioner next argues that the Magistrate Judge erred in finding Petitioner failed to demonstrate Attorney Ross's representation was ineffective. Petitioner argues Attorney Ross "fail[ed] to recognize the necessity of obtaining a sentence in this matter before the expiration of [his] state sentence" so that he could receive a two-year credit under United States Sentencing Guideline § 5G1.3(b). (Doc. 164 at 6.)

"A defendant seeking to overturn a conviction on the ground of ineffective assistance of counsel bears a heavy burden." *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004). To successfully allege ineffective assistance of counsel, Petitioner must satisfy the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). He must show both (1) that counsel's performance was so deficient that "the identified acts or omissions were outside the wide range of professionally competent assistance[,]" and (2) that the deficient performance so prejudiced his defense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 690, 694. "The [ineffective assistance of counsel] claim must be rejected if the defendant fails to meet either the performance

---

[2] In correspondence attached to Attorney Garrity's affidavit, Attorney Garrity explains that he and the federal prosecutor exchanged emails "in relation to properly advising [Petitioner] on his Massachusetts case and consequences of steps he may take in the Massachusetts case." (Doc. 144 at 3, ¶ 6.) For example, in November 2017, Attorney Garrity asked the government to provide an estimate of Petitioner's potential sentencing Guidelines range in the event of conviction, which pertained to Attorney Garrity's decision-making in Petitioner's state case. *See* Doc. 144-1 at 8 ("I was also wondering whether [Petitioner] would get criminal history points on the federal case by way of working out a deal on his state case first[.]"); Doc. 144-3 at 7 (informing Petitioner's mother that he "doesn't have a lawyer in Vermont to negotiate with [the] [U.S.] attorney," and he is "[w]orking out a deal here that doesn't impact [Petitioner] on his federal charges"). Although Attorney Garrity asked the government in June 2018 when Petitioner would "be moved into federal custody" after his sentencing in Massachusetts, his inquiry does not establish an intent to represent Petitioner in the Vermont federal case, particularly in light of the fact that Petitioner was unable to pay the required legal fees and Attorney Garrity explicitly informed his mother that he was unrepresented in the Vermont federal case. (Doc 144-1 at 9.)

prong or the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011); *see also Chang v. United States*, 250 F.3d 79, 84 (2d Cir. 2001) (affirming the district court's denial of § 2255 motion based on ineffective assistance of counsel where defendant "had not established a deficiency in representation" and stating that district court therefore was not required to address whether defendant "could show prejudice if in fact there had been deficient representation"); *Brown v. Artuz*, 124 F.3d 73, 80 (2d Cir. 1997) (denying motion to remand for findings as to counsel's performance where defendant "cannot satisfy the prejudice prong of the *Strickland* test").

Constitutionally effective counsel embraces a "wide range of professionally competent assistance[,]" and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690; *see also Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011) (requiring the trial court "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance") (quoting *Strickland*, 466 U.S. at 689). The performance inquiry examines the reasonableness of trial counsel's actions under "all the circumstances[,]" *id.*, from the perspective of trial counsel "at the time[.]" *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) (internal quotation marks omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight[.]" *Id.* at 408 (quoting *Strickland*, 466 U.S. at 689) (internal quotation marks and alteration omitted).

Under U.S.S.G. § 5G1.3(b), where:

> a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:
>
>> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>>
>> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

"The purpose of § 5G1.3(b) is to ensure that petitioner is properly credited for the time served for the related crime." *Rosario v. United States*, 2004 WL 439386, at *6 (S.D.N.Y. Mar. 9, 2004).

To qualify as relevant conduct, the conduct "must occur in the course of commission of the offense of conviction." *United States v. Wernick*, 691 F.3d 108, 115 (2d Cir. 2012). It is "inappropriate to apply section 5G1.3(b) to a defendant's convictions that arose from two completely unrelated offenses." *Jackson v. Killian*, 2009 WL 1835004, at *3 (S.D.N.Y. June 23, 2009) (footnotes and alterations omitted); *see also Rosario*, 2004 WL 439386, at *6 ("Here, it would be inappropriate to apply § 5G1.3(b) because [petitioner's] convictions arose from two completely unrelated offenses. When this [c]ourt sentenced petitioner for his 1998 conspiracy charge, his 1990 possession offense was only taken into consideration when determining his criminal history category.").

Petitioner was charged in Massachusetts with drug possession, possession with intent to distribute methamphetamine, and unlawful possession of ammunition. At the time of his arrest, there were outstanding Massachusetts state warrants. He remained in primary Massachusetts state custody from the time of his arrest on August 18, 2017 until he was sentenced in Massachusetts state court on July 11, 2018.

The Vermont federal case, on the other hand, charged Petitioner with possession with intent to distribute 50 grams or more of methamphetamine on May 5, 2017 after he attempted to sell fentanyl analogues to a confidential informant in Vermont. On August 31, 2017, a federal grand jury in the District of Vermont returned a two-count Indictment charging Petitioner with possession with intent to distribute 50 grams or more of methamphetamine on or about May 5, 2017, and possession with intent to distribute cocaine on or about August 18, 2017 based on conduct which occurred in Vermont. The Superseding Information included additional conduct which occurred in the District of Vermont. The conduct forming the basis of the Massachusetts state case and the Vermont federal case are separate in terms of both time and location, and the mere fact that Petitioner was being investigated in Vermont at the time he was arrested in

11

Massachusetts does not require a different outcome. *See Scott v. United States,* 2023 WL 5003346, at *5 (S.D.N.Y. Aug. 4, 2023) ("Although it is true that the Government was already investigating the conduct that led to the January 2016 indictment during the time of his 2010 Robbery Sentencing, that does not make the conduct 'relevant conduct' for the purposes of sentencing.").

At the sentencing hearing, the government consented to a § 5K2.23 downward departure from the Guidelines so that Petitioner would "receive credit for 24 months that he ha[d] served" and "recognize[d] that the Bureau of Prisons likely will begin counting that from August 18th, 2019, which is indicated on the front of the [Presentence Report] as the date that the [Petitioner] – [that] the Massachusetts sentence was discharged and the [Petitioner] entered federal custody." (Doc. 140 at 42.) Following this request, the court gave Petitioner credit for the 24 months whether he was entitled to it or not. As the Magistrate Judge observed, "the [c]ourt departed downward two years from the advisory Guidelines range to account for time in Massachusetts custody, ultimately requiring that [Petitioner] serve only the ten-year minimum sentence, which was approximately five years less than the low end of the Guidelines range." (Doc. 163 at 32 n.15); *see also* Doc. 140 at 55 ("Pursuant to the parties' joint motion to depart under Section 5K2.23 to reflect the 24 months that [Petitioner] spent in state custody, the guideline is reduced to 186 to 238 months."). The court further noted that even if it were authorized to make a departure below the ten-year mandatory minimum, it "would not do so" because it found Petitioner "need[ed] an additional consequence for the firearms," which the court added "as a reasonable response would be the 24 months that [he] already served." *Id.* at 59-60.

Because Petitioner has failed to establish either prong of *Strickland*, the Magistrate Judge correctly recommended the court deny his amended petition based on Attorney Ross's alleged ineffective assistance of counsel. The court finds this conclusion well-reasoned and amply supported by the record.

### D. Whether the Magistrate Judge Erred in Concluding Petitioner's Rights Under the Speedy Trial Act and the IAD Were Not Violated.

Petitioner's third objection to the R & R is that the Magistrate Judge erroneously concluded his August 18, 2017 arrest in Massachusetts was "a federal arrest in all but name." (Doc. 164 at 9.) Petitioner asserts that federal agents approached him at the airport and handcuffed, interviewed, and read him his *Miranda* rights, and he did not speak to or see a Massachusetts state trooper until later that night in a holding cell. He further contends that his arrest "was because of a tip to federal officials engaged in a federal investigation in another state jurisdiction investigating Petitioner for federal drug crimes." *Id.* at 10.

The dual sovereignty doctrine "recognizes that the federal government is not bound by the actions of state authorities and that successive state and federal prosecutions are constitutionally permissible." *United States v. Mejias*, 552 F.2d 435, 441-42 (2d Cir. 1977). Petitioner is correct that an exception to this rule applies where a state prosecution was "merely a tool of the federal authorities[.]" *Bartkus v. Illinois*, 359 U.S. 121, 123 (1959). Thus, "a state prosecution does not bar a subsequent federal prosecution of the same person for the same act." *United States v. Coonan*, 938 F.2d 1553, 1562 (2d Cir. 1991).

"The dual sovereignty doctrine, however, is not without exception[,]" and "circumstances may exist in which state and federal prosecutions are so intertwined as to undermine the assumption that two supposedly independent criminal actions were prosecuted by separate sovereigns." *Id.* at 1563. "The key criterion in determining whether the application of this exception is warranted is not the extent of control exercised by one prosecuting authority over the other but rather the ultimate source of the power under which the respective prosecutions were undertaken." *Id.* Nonetheless, where the "state and federal prosecutions were separately conducted[,]" "[i]t does not [automatically] sustain a conclusion that the state prosecution was a sham and a cover for a federal prosecution," even where the federal agent "who had conducted the investigation on behalf of the Federal Government turned over to the Illinois prosecuting

13

officials all the evidence he had gathered against the petitioner" and "federal officials acted in cooperation with state authorities, as is the conventional practice between the two sets of prosecutors throughout the country." *Bartkus*, 359 U.S. at 122-24.

Here, although "there undeniably was cooperation and coordination between the state and federal authorities[,]" there is no basis to conclude that "the state prosecutors were not acting independently when they indicted and prosecuted [Petitioner]." *Coonan*, 938 F.2d at 1563. Petitioner concedes that there was no criminal complaint or arrest warrant pending in the Vermont federal case at the time he was arrested in Massachusetts. The state case was prosecuted by Massachusetts prosecuting officials within their discretionary authority and arose from a separate offense which occurred in Massachusetts. Petitioner's assertion that his arrest in Massachusetts was "merely the excuse used to effectuate the [federal] arrest" is thus unpersuasive and the Magistrate Judge properly determined that the dual sovereign doctrine applies. (Doc. 164 at 10.)

With respect to his Speedy Trial Act arguments, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial[.]" U.S. Const. amend. VI. The right to a speedy trial is "fundamental to our system of justice[.]" *United States v. Black*, 918 F.3d 243, 253 (2d Cir. 2019) (internal quotation marks omitted). The constitutional right to a speedy trial is triggered "by arrest, indictment, or other official accusation[.]" *Doggett v. United States*, 505 U.S. 647, 655 (1992). The Second Circuit has explained that "courts are required to count the time between a defendant's arrest and the filing of an indictment in the duration of the relevant speedy trial time period." *Black*, 918 F.3d at 258. Courts analyze four factors when evaluating a Sixth Amendment speedy-trial claim: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant caused by the delay. *Barker v. Wingo*, 407 U.S. 514, 530-31 (1972). These factors "must be considered together with such other circumstances as may be relevant[,]" and individually "have no talismanic qualities[.]" *Id.* at 533.

The Speedy Trial Act requires that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the

14

date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). In addition:

> [i]n any case in which a plea of not guilty is entered, the trial of a defendant . . . shall commence within seventy days from the filing date . . . of the . . . indictment, or from the date the defendant has appeared before a judicial officer[,] . . . whichever date last occurs.

18 U.S.C. § 3161(c)(1). The Second Circuit has recognized that "an individual is not arrested under 3161(b) until he is taken into custody after a federal arrest for the purpose of responding to a federal charge." *United States v. Bloom*, 865 F.2d 485, 490 (2d Cir. 1989) (quoting *United States v. Johnson*, 815 F.2d 309, 312 (5th Cir. 1987), *cert. denied*, 484 U.S. 1068 (1988)). Accordingly, "[r]estrictions of liberty that are '*not* in connection with the filing of [a] complaint or for purposes of [the defendant's] facing federal charges . . . d[o] *not* constitute the type of imposition that triggers the Speedy Trial Act's timing provisions.'" *United States v. Jones*, 129 F.3d 718, 721 (2d Cir. 1997) (quoting *Bloom*, 865 F.2d at 491) (emphasis, ellipses, and second and third brackets in original).

Although the court denied Petitioner's suppression motion, Attorney Ross researched whether Petitioner "could assert either a violation of the Speedy Trial Act or the Interstate Agreement on Detainers for the government's nearly year long delay in bringing him to Vermont to answer to the Indictment." (Doc. 146 at 18, ¶ 88.) Attorney Ross's research concluded that Petitioner "had no such claim[,]" as "[t]he government placed a detainer on [Petitioner] while he was in Massachusetts custody[,]" and "[f]ive days after [Petitioner] resolved his Massachusetts case, the government began the process of bringing [Petitioner] to Vermont via a writ to answer federal charges." *Id.* ¶ 89. As Attorney Ross notes, "[t]his procedural process did not violate either the Interstate Agreement on Detainers or the Speedy Trial Act." *Id.* "Before [Petitioner] agreed to plead guilty," Attorney Ross "met with him and discussed the results of [her] exhaustive legal research." *Id.* ¶ 91.[3]

---

[3] Attorney Ross notes that, contrary to Petitioner's claims, she "obtained [Petitioner's] informed consent before consenting on his behalf to exclude time from the Speedy Trial Act clock." (Doc. 146 at 17, ¶ 83.) Her filings with the court contain this representation. *See* Doc. 54 at 1-2

15

Turning to Petitioner's alleged IAD violation, the day after Petitioner was sentenced in Massachusetts, the government, which had already lodged a detainer, filed a writ ad prosequendum to have him transported to Vermont. *See United States v. Evans*, 423 F. Supp. 528, 531 (S.D.N.Y. 1976) ("Both the express language and purpose of the [IAD] pertain to prisoners who have already been convicted and have entered upon a term of imprisonment, and not to persons held in custody solely to await trial.").

As a result of exclusions to which Petitioner consented, the case never exceeded either the Speedy Trial Act's seventy-day limit or the time limits under the IAD. *See United States v. Roy*, 771 F.2d 54, 59 (2d Cir. 1985) ("Article VI(a) of the [IAD] provides that the running of the 120-day time period 'shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter.' We have interpreted this language to 'exclude all those periods of delay occasioned by the defendant.'") (quoting *United States v. Scheer*, 729 F.2d 164, 168 (2d Cir. 1984)).

Because the Magistrate Judge correctly concluded that Petitioner's August 18, 2017 arrest in Boston was proper under the dual sovereign doctrine and that his rights under the Speedy Trial Act and the IAD were not violated, the court ADOPTS these conclusions in their entirety.

### E. Petitioner's "Legitimacy" Objections.

To the extent Petitioner raises "a final comment on [the] legitimacy" of the Vermont federal case, (Doc. 164 at 10), objections to an R & R "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) (internal quotation marks and citation omitted); *see also Bailey v. U.S. Citizenship & Immigr. Serv.*, 2014 WL 2855041, at *1 (S.D.N.Y. June 20, 2014) ("[O]bjections that are not clearly aimed at particular findings

---

("[Petitioner] . . . agrees that the period of delay resulting from any continuance is excluded in computing the time within which trial must commence under the Speed[y] Trial Act, as set forth in 18 U.S.C. § 3161."); Doc. 54-1 at 1 ("Defense counsel has explained the Speedy Trial Act to [Petitioner], who recognizes that the additional time granted will be excluded from computation under the Speedy Trial Act.").

16

x

in the [R & R] do not trigger *de novo* review."). "The court may adopt those portions of the [R & R] to which no objection is made as long as no clear error is apparent from the face of the record." *Green v. Dep't of Educ. of City of N.Y.*, 2020 WL 5814187, at *2 (S.D.N.Y. Sept. 30, 2020) (quoting *Oquendo v. Colvin*, 2014 WL 4160222, at *2 (S.D.N.Y. Aug. 19, 2014)) (internal quotation marks and citation omitted).

Petitioner's generalized objections either restate arguments he previously made, or are conclusory and vague and "fail to state any specific basis for not adopting the R & R." *Petrovic v. Comm'r of Soc. Sec.*, 2016 WL 6082038, at *1 (S.D.N.Y. Oct. 14, 2016) ("Even construing Plaintiff's objections to the R & R broadly because he is proceeding *pro se*, his objections are conclusory, vague, and fail to state any specific basis for not adopting the R & R."). The R & R contains no clear errors, the court ADOPTS it in full.

## CONCLUSION

For the foregoing reasons, the court hereby ADOPTS the Magistrate Judge's R & R (Doc. 163) as the court's Opinion and Order and DENIES Petitioner's amended § 2255 petition. (Doc. 121.)

Pursuant to Fed. R. App. P. 22(b)(1) and 28 U.S.C. § 2253(c)(2), the court DENIES Petitioner a certificate of appealability in this matter because Petitioner has failed to make a substantial showing of the denial of a constitutional right.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 8th day of February, 2024.

Christina Reiss, District Judge
United States District Court